UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| Eric Ferguson, | ) | Case No. 20bk17679 |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| | ) | |
| David R. Herzog, not individually but as Trustee for the Estate of Eric Ferguson, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. No. 20ap00426 |
| | ) | |
| v. | ) | Judge Timothy A. Barnes |
| | ) | |
| Eric Ferguson, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

TIMOTHY A. BARNES, Judge.

MEMORANDUM DECISION

        This matter comes on for consideration on the Complaint Objecting to Discharge [Adv. Dkt. No. 1] (the "Complaint") brought by David R. Herzog, not individually, but as Trustee for the Estate of Eric Ferguson (the "Plaintiff") in the above-captioned adversary proceeding.  The Complaint is opposed by Eric Ferguson (the "Defendant").  The Plaintiff alleges that the Defendant has failed to sufficiently explain the loss of $70,159.22 despite the Defendant claiming the money was lost gambling.

        For the reasons more fully set forth below, after trial, the court finds that the Plaintiff has established that the Defendant failed to satisfactorily explain the disposition of the assets. Accordingly, judgment will be entered in favor of the Plaintiff in the manner described herein and the Defendant's discharge will be denied.

JURISDICTION

        The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code").  28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under the Bankruptcy Code or arising in or related to cases under the Bankruptcy Code. 28 U.S.C. § 1334(b).  District courts may refer these cases to the bankruptcy judges for their districts.  28 U.S.C. § 157(a).  In accordance with section 157(a), the District Court for the Northern

District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois.  N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred has statutory authority to enter final judgment on any proceeding arising under the Bankruptcy Code or arising in a case under the Bankruptcy Code.  28 U.S.C. § 157(b)(1).  Bankruptcy judges must therefore determine, on motion or *sua sponte*, whether a proceeding is a core proceeding or is otherwise related to a case under the Bankruptcy Code.  28 U.S.C. § 157(b)(3).  As to the former, the bankruptcy court may hear and determine such matters.  28 U.S.C. § 157(b)(1).  As to the latter, the bankruptcy court may hear the matters, but may not decide them without the consent of the parties.  28 U.S.C. §§ 157(b)(1), (c).  Absent consent, the bankruptcy court must "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected."  28 U.S.C. § 157(c)(1).

In addition to the foregoing considerations, a bankruptcy judge must also have constitutional authority to hear and determine a matter.  *Stern v. Marshall,* 564 U.S. 464 (2011).  Constitutional authority exists when a matter originates under the Bankruptcy Code or, in noncore matters, where the matter is either one that falls within the public rights exception, *id.*, or where the parties have consented, either expressly or impliedly, to the bankruptcy court hearing and determining the matter.  *See, e.g., Wellness Int'l Network, Ltd. v. Sharif,* 135 S. Ct. 1932, 1939 (2015) (parties may consent to a bankruptcy court's jurisdiction); *Richer v. Morehead,* 798 F.3d 487, 490 (7th Cir. 2015) (noting that "implied consent is good enough").

The Complaint challenges the Defendant's discharge under section 727(a)(5) of the Bankruptcy Code.  An objection to a debtor's discharge is a statutorily core proceeding, 28 U.S.C. § 157(b)(2)(J), arises under the Bankruptcy Code and may only arise in a bankruptcy case.  A bankruptcy court has constitutional authority to enter final judgment on an objection to a debtor's discharge in a bankruptcy case.  *Steege v. Johnsson (In re Johnsson),* 551 B.R. 384, 389 (Bankr. N.D. Ill. 2016) (Barnes, J.).  Equally important, no party has contested the jurisdiction or authority of this court in entering final orders in this matter.

Accordingly, the court has the jurisdiction, statutory authority and constitutional authority to hear and determine the Complaint.

PROCEDURAL HISTORY

The court has considered the evidence and arguments presented by the parties at the trial, which took place remotely in accordance with the Amended Trial Scheduling Order [Adv. Dkt. No. 19] (the "Pretrial Order") on July 20, 2021, (the "Trial"), has reviewed the transcript of the Trial, [Adv. Dkt. No. 24] ("Tr.")], has reviewed the Complaint and has reviewed each of the following:

(1)   Debtor/Defendant's Answer to Complaint Objecting to Discharge [Adv. Dkt. No. 6];

(2)   The Pretrial Order;

(3)   Joint Pretrial Statement [Adv. Dkt. No. 20] (the "Joint Statement"); and

(4)     Joint Exhibits 1–12 [Adv. Dkt. No. 21] (the "Joint Exhibits").

Though these items do not constitute an exhaustive list of the filings in the above-captioned adversary case, the court has taken judicial notice of the contents of the docket in this matter and the underlying bankruptcy case.  *See Levine v. Egidi*, Case No. 93C188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993) (authorizing a bankruptcy court to take judicial notice of its own docket); *In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 2011) (Goldgar, J.) (recognizing same).

The Pretrial Order entered in this matter required the parties to file a joint pretrial statement, a list of witnesses and a list of exhibits that the parties planned to offer into evidence at the Trial. Pretrial Order, p. 2.  The Pretrial Order also allowed each party to file objections to an opposing party's witnesses and exhibits in lieu of any motion *in limine* that the party wished to bring.  *Id.* at pp. 2–3.  The Pretrial Order stated that all exhibits to which no objections were raised in the pretrial statements would be admitted into evidence.  *Id.* at p. 2.  Under the express terms of the Pretrial Order, the failure to file an objection would result in the waiver of any pretrial or evidentiary objections that could have been raised by such deadline.  *Id.* at pp. 2–3.  If the parties failed to use an exhibit at trial or make other meaningful use of the exhibit, it is considered not relevant by the court.  *Id.* at p. 3.

No objections to the Joint Exhibits or any evidence were filed or voiced by the parties before or during the Trial and thus each of the parties' exhibits have been admitted into evidence.

FINDINGS OF FACT[1]

From the above review and the consideration of the procedural background, as well as of the evidence presented at the Trial, the court determines the salient facts to be and so finds as follows:

1.     The Defendant sold real estate located at 2911 W. Harrison St., Chicago, IL on November 25, 2019.  Joint Stmt., p. 5.

2.     As a result of the sale, the Defendant received net proceeds of $70,159.22, which were wired into his account the next day.  *Id.*

3.     On September 25, 2020, the Defendant filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code, listing his unsecured debt on Schedule F as $51,617.00.  *Id.* at pp. 4–5.

4.     At the time the Defendant filed for bankruptcy, he had essentially no money in his bank accounts.  *Id.* at p. 5.

5.     The Defendant withdrew $15,210.22 from ATMs at various casinos between November 26, 2019, and January 10, 2020.  *Id.*

---

[1]     *See* Fed. R. Civ. P. 52(a) (made applicable to these proceedings by Fed. R. Bankr. P. 7052).  To the extent that any of the findings of fact constitute conclusions of law, they are adopted as such, and to the extent that any of the conclusions of law constitute findings of fact, they are adopted as such.  Adjudicative facts may also be found and determined later in this Memorandum Decision.

6.      The Defendant made "counter cash bank withdrawals" of $37,000.00 between December 2, 2019, and December 23, 2019.  *Id.*

7.      The Defendant testified at the Trial that he spent the ATM and counter cash withdrawals gambling.  Tr. at p. 25.

8.      The Defendant testified at the Trial that he frequently gambles and that his gambling losses in 2019 were $80,000.00–$90,000.00 greater than the amount at issue here.  *Id.* at p. 35.

9.      The Defendant testified he lost the relevant cash withdrawals playing poker, staying at casino poker tables for multiple days without getting a hotel room.  *Id.* at pp. 28, 29, 30, 34.

10.     The Defendant testified the casinos provide no receipts for his type of gambling.  *Id.* at p. 28.

11.     One casino the Defendant frequented provided letters reflecting that the Defendant lost $13,786.00 at the casino in 2019 and $725.00 in 2020.  Joint Exhs. 12, 13.

12.     The letter for 2019 represented an estimate of the Defendant's losses and included gambling from before the November 2019 real estate sale.  Tr. at p. 33.

13.     The Defendant testified he has no further documentation that he used the cash from his ATM or counter cash withdrawals for gambling.  *Id.* at p. 25.

The Plaintiff argues that the Defendant's testimony, ATM withdrawal records from casinos and more general cash withdrawal records are insufficient to satisfy section 727(a)(5) of the Bankruptcy Code as to the $52,210.22 the Defendant withdrew in cash.

CONCLUSIONS OF LAW

A.      <u>Applicable Law and Burdens</u>

Under section 727(a)(5) of the Bankruptcy Code, a debtor is ineligible to receive a discharge if "the debtor has failed to explain satisfactorily, … any loss of assets or deficiency of assets to meet the debtor's liabilities."  11 U.S.C. § 727(a)(5).  This section is "broadly drawn and clearly gives a court broad power to decline to grant a discharge in bankruptcy where the debtor does not adequately explain a shortage, loss, or disappearance of assets."  *First Federated Life Ins. Co. v. Martin (In re Martin)*, 698 F.2d 883, 886 (7th Cir. 1983).

For an objection to discharge under section 727(a)(5), the objecting party first carries the burden of proving that "the debtor at one time owned substantial and identifiable assets that are no longer available for his creditors."  *Stathopoulos v. Bostrom (In re Bostrom)*, 286 B.R. 352, 364 (Bankr. N.D. Ill. 2002) (Squires, J.), *aff'd*, Case No. 02 C 9451, 2003 WL 403138 (N.D. Ill. Feb. 20, 2003); *see also Banner Oil Co. v. Bryson (In re Bryson)*, 187 B.R. 939, 955–56 (Bankr. N.D. Ill. 1995) (Schmetterer,

J.).[2] If the objector meets that burden, the debtor must then offer a "satisfactory explanation for the loss." *Id.*[3] What makes a satisfactory explanation in a specific case is up to the discretion of the bankruptcy court. *Structured Asset Services, L.L.C. v. Self* (*In re Self*), 325 B.R. 224, 250 (Bankr. N.D. Ill. 2005) (Squires, J.).

Losses related to gambling, despite typically producing limited documentation, must still meet section 727(a)(5)'s satisfactory explanation requirement. *United States Trustee v. Tran* (*In re Tran*), 464 B.R. 885, 895 (Bankr. S.D. Cal. 2012). Courts have consistently found that where a debtor keeps no record of their gambling losses, they cannot overcome a *prima facie* section 727(a)(5) objection. *Saluja v. Mantra* (*In re Mantra*), 314 B.R. 723, 731 (Bankr. N.D. Ill. 2004) (Squires, J.) (collecting cases); *Carter Eng'g Co., Inc. v. Carter* (*In re Carter*), 236 B.R. 173, 181 (Bankr. E.D. Pa. 1999) ("General assertions that money was … lost through gambling, without documentation, are unacceptable."). Despite the nature of the losses, if a debtor provides sufficient documentary evidence, however, they can meet their burden under section 727(a)(5). *See Lashinsky v. Amphone* (*In re Amphone*), 613 B.R. 764, 784–85 (Bankr. D. Kan. 2020) (sufficient evidence where debtor provided bank statements, compilation of each day's winnings and their location, whether markers were used, and the testimony of the debtor's husband and her gambling counselor).

As to what evidence a gambler may provide, the bankruptcy court in *Fokkena v. Huynh* (*In re Huynh*), 379 B.R. 865 (Bankr. D. Minn. 2008), observed that possible evidence includes: "wagering tickets, canceled checks, credit records, bank withdrawals, and statements of winnings … ." *Id.* at 874. Additional corroborating evidence may include geographic evidence such as hotel bills, airplane tickets, gas receipts, or testimony from someone with knowledge of the wagering activity. *Id.* Debtors may also provide corroborating witness testimony. *See Amphone*, 613 B.R. at 784–85.

B.      Application to the Facts at Hand

In this proceeding, the Defendant's testimony alone was insufficient in quality, perceived veracity, specificity and narrative to satisfactorily explain his loss of funds. Still, this case is unlike the many cases where the debtor is barred from discharge for having *no* documentation. *See Mantra*, 314 B.R. at 731. The Defendant did provide some documentary evidence—the Defendant provided records of ATM withdrawals at casinos (totaling about 30% of the sale funds) and bank records showing that dates of bank cash withdrawals happened around the time the Defendant testified to be at casinos gambling. The question then, is whether this evidence, in addition to the Defendant's testimony, was a satisfactory explanation for section 727(a)(5) purposes. This court finds the Defendant's explanation to be unsatisfactory.

---

[2]      The Bankruptcy Code does not define the how much must be unexplained for a successful objection to discharge, though a court may take the amount at issue into consideration. *See Miami Nat'l Bank of Miami, Okla. v. Hacker* (*In re Hacker*)*,* 90 B.R. 994, 996–97 (Bankr. W.D. Mo. 1987). If the amount at issue makes "the case for denial of discharge close and borderline, the authorities repose an ample discretion in the bankruptcy court." *Id.*

[3]      The "ultimate burden of proof in a proceeding objecting to a discharge lies with the plaintiff." *Martin*, 698 F.2d at 887 (emphasis removed). The "burden of going forward with the evidence" shifts however, due to the difficulty of proving a negative and any evidence likely being under the control of the debtor. *Id.*

While gambling typically leaves little in the way of documentary evidence (especially poker, as the Defendant testified), there is more the Defendant could have done to convince the court. For instance, the Defendant could have provided a witness to corroborate his gambling, traveling, absences from work/community/home, etc. *See Adams v. Inzero* (*In re Inzero*), 426 B.R. 428 (Bankr. D. Conn. 2009) (where father testified as to son's gambling).

The Defendant provided no records from either of the two casinos at which he alleged he primarily gambled. Even a denial that further records exist in response to a subpoena would have been helpful. The one record the Defendant did provide was an apparent estimated summary of his gambling from all of 2019 at a third casino.[4] Yet, the document estimated a loss of $13,786.00 for a year where the Defendant testified he lost over $80,000.00. Tr. at pp. 24, 35. It is unclear how the estimate was made or why the number is so low compared to the Defendant's estimated total losses. Even if, *arguendo*, the letter noting losses is read in the Defendant's favor, it explains less than a quarter of the total unexplained cash withdrawals. That alone would be insufficient to explain the Defendant's total losses. *See Tran*, 464 B.R. at 891 (finding insufficient explanation despite debtor providing records for a small amount of gambling losses). In fact, discounting the losses in the letter in their entirety would still result in the Defendant having sufficient funds to pay the debts in question. Therefore, the letter has little value here beyond showing the Defendant incurred some losses at a casino in 2019.

The Defendant also failed to produce the tax forms or additional documentation suggested in *Huynh*, 379 B.R. at 874, beyond bank statements. It is difficult to fathom that frequent trips to casinos produced no corroborating documentation from gas stations, buses, restaurants or similar trip-related expenses. The burden was on the Defendant to preserve such documentation and provide it as evidence here.

Additional documentation is not just a formality. Beyond being evidence in its own right, additional documentation would have shored up questionable testimony from the Defendant. For instance, at the Trial the Plaintiff asked the Defendant where he slept when he gambled for multiple days, including three days in a row. Tr. at pp. 29, 30, 34. The Defendant testified that he stayed at the table the entire time without sleeping. *Id.* at p. 34. While this is possible, it is difficult to believe absent corroborating evidence. None was provided.

The Defendant's testimony also tended to lack specificity, which specificity would have assisted him in being found credible. For instance, when the Defendant's attorney asked him several questions about what he did with specific cash withdrawals, his answers were typically a simple "[w]ent to the casino." *Id.* at pp. 28–30. Some memories of the casino at which the money was spent or even whether he had particularly good or bad luck at any of those casino trips might have gone a long way in increasing the Defendant's credibility. That the Defendant seeks further to have the court conclude from the location of some of the withdrawals (at casino ATMs) that the funds were lost gambling is another example of the lack of specificity in the Defendant's case. Even if the location of the withdrawal made such a conclusion inevitable (it does not), the amount of the funds that qualify is still simply not sufficient to explain the overall disposition of the funds.

---

[4]     As noted earlier, an estimate for all of 2019 includes both losses before and after the Defendant obtained the sale funds. The Defendant failed to offer a method of determining how, if at all, the estimate could be narrowed to the period in question.

Similarly, the Defendant's explanation requires the court to believe that he is an incredibly unlucky (or perhaps poor) poker player as the Defendant never discussed or mentioned leaving the poker table with winnings. *See Tran*, 464 B.R. at 892 ("the [c]ourt does not find credible that [debtor] never emerged from a casino with net [poker] winnings."). The lack of even a basic accounting of gambling wins and losses (beyond simply what was withdrawn in cash) makes it impossible for the court to determine whether the cash was really lost gambling or was hidden away to avoid creditors. *See McBee v. Sliman,* 512 F.2d 504, 506 (5th Cir. 1975); *Tran*, 464 at 892.

What *McBee* makes clear is the tension underlying the entirety of a gambling loss defense to a section 727(a)(5) action. While "[n]othing in the [Bankruptcy Code] or controlling case law condemns gamblers to denial of discharge *per se,*" gamblers in bankruptcy, like all other debtors, must explain their losses. *Tran*, 464 B.R. at 895. Absent such a requirement, a claim of gambling losses would become a convenient defense, one where the paucity of evidence would be explained away by the nature of the loss. That would open an avenue to abuse for unethical debtors. Thus, the bankruptcy courts must be vigilant in enforcing the need for corroborating evidence.

Here, the Defendant failed to provide such corroboration to the level of satisfaction required. While no specific piece of evidence suggested in this opinion is required, some additional evidence is.

Accordingly, the Defendant has failed to satisfactorily explain his loss of assets and is ineligible for a discharge pursuant to section 727(a)(5).

CONCLUSION

For the foregoing reasons, the Plaintiff has made a *prima facie* showing that funds sufficient to pay the Defendant's debts in full existed and the Defendant has failed to sufficiently explain the dissipation of such funds. As a result, judgment is entered in favor of the Plaintiff on the sole count of the Complaint and the Defendant's discharge will be, by separate order entered concurrently herewith, denied.

Dated: October 29, 2021                                    ENTERED:

Timothy A. Barnes
United States Bankruptcy Judge

7